FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant, *v.* QUEENS COUNTY TRUST COMPANY, Respondent.

Notice — when notice sufficient to require investigation of facts — when party who ought to have made such inquiry chargeable with knowledge of facts — when bank which paid checks, drawn by a trustee in bankruptcy without authority, liable because no inquiry was made as to authority of trustee.

1. Actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would have been warranted in inferring notice.  If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible

15

inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired. Knowledge of facts which, to the mind of a man of ordinary prudence, beget inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed.

2. A trustee in bankruptcy was directed to furnish a surety company bond and to deposit with defendant all moneys of the bankrupt estate. The trustee furnished a bond given by plaintiff which was subsequently obliged to pay on account thereof the moneys it seeks to recover from defendant, the trustee having drawn funds from the defendant under such circumstances that the defendant is chargeable with knowledge that they were trust funds and that they could not under the rule of the court be withdrawn without the signature of a designated officer of the court. Certain of the checks drawn by the trustee were so countersigned. *Held,* that as to checks not so countersigned, a simple inquiry would have brought the rule or order of the court and its provisions to the attention of defendant and that it is, therefore, chargeable with knowledge of its existence.

*Fidelity & Deposit Co.* v. *Queens Co. Trust Co.,* 174 App. Div. 160, reversed.

(Argued January 28, 1919; decided April 22, 1919.)

APPEAL from a judgment, entered June 22, 1916, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon a verdict directed by the court and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eli J. Blair* and *Frank H. Platt* for appellant. The defendant was fully informed that the funds in the account of " Robert J. Peebles, Trustee," were the funds of the bankrupt estate of William Trist Bailey, and was repeatedly advised that the sums converted belonged to the bankrupt estate. (*Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Beaver* v. *Beaver,* 117 N. Y. 421; *Powell* v. *Pangborn,* 161 App. Div. 453; *Sabin* v. *Blake-McFall Co.,* 223 Fed. Rep. 501; *Matter of Gerber,* 186 Fed. Rep. 693). The defendant, having knowledge that the funds belonged to the bankrupt estate of William Trist Bailey, was

chargeable with the limitations of the trustee's powers. (*First National Bank* v. *National Broadway Bank*, 156 N. Y. 459; *American National Bank* v. *Fidelity & Deposit Co. of Md.*, 58 S. E. Rep. 867; *Parks* v. *Knickerbocker Trust Co.*, 137 App. Div. 719; *Walker* v. *State Trust Company*, 40 App. Div. 55.) Plaintiff was subrogated to the rights of the bankrupt estate to recover from the defendant bank the amounts converted, with interest from the date of the conversion. (*Am. Nat. Bank* v. *Fidelity & Deposit Co.*, 58 S. E. Rep. 867; *P. W. Coal Co.* v. *Kerr*, 220 N. Y. 137; *National Surety Co.* v. *National City Bank*, 172 N. Y. Supp. 413; *Allen* v. *Puritan Trust Co.*, 211 Mass. 409; *Dunlop* v. *James*, 174 N. Y. 411.)

*Charles H. Street* for respondent. Defendant had neither knowledge nor notice, at the time when the account in the name of "Robert J. Peebles, Trustee," was opened, that Peebles was a trustee in bankruptcy or that the moneys deposited or to be deposited in said account were bankruptcy funds. (*Manhattan Savings Institution* v. *N. Y. National Exchange Bank*, 170 N. Y. 58; *Beaver* v. *Beaver*, 117 N. Y. 421, 430; *Boone* v. *Citizens Savings Bank*, 84 N. Y. 83, 86; *Swartwout* v. *Mechanics' Bank of N. Y.*, 5 Den. 555.) The relation between the defendant and Peebles as regards the account was that of debtor and creditor. Defendant was bound to make all inquiries and take all steps necessary for the protection of Peebles, its depositor, but it had no contractual or fiduciary relations with the bankrupt estate. Its only duty to said estate was to refrain from knowingly appropriating any of the assets thereof to its own benefit. (*Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82; *Shipman* v. *Bank of State of New York*, 126 N. Y. 318; *Metropolitan Nat. Bank* v. *Lloyd*, 90 N. Y. 535; *North British, etc., Ins. Co.* v. *Merchants' Nat. Bank*, 161 App. Div. 344; *Citizens Nat. Bank* v. *Importers & Traders Nat. Bank*, 119 N. Y. 195; *Clark Co.* v. *Mt. Morris*

*Bank*, 85 App. Div. 362; *Borroughs* v. *Tradesman's Nat. Bank*, 87 Hun, 6; *Brooke* v. *Tradesman's Nat. Bank*, 69 Hun, 202; *Hemphill* v. *Yerkes*, 132 Penn. St. 545; Morse on Banks & Banking, § 317.) The countersignatures and memoranda, which appeared on some of the earlier checks drawn against the account, were not notice to the defendant that Peebles was a trustee in bankruptcy or that the funds deposited in the account were bankruptcy funds; nor did such countersignatures or memoranda impose any duty of inquiry upon the defendant. (*State Nat. Bank* v. *Dodge*, 124 U. S. 333; *State Nat. Bank* v. *Reilly*, 124 Ill. 464; *Duckett* v. *Nat. Mechanics Bank of Baltimore*, 86 Md. 400; *Denton Nat. Bank* v. *Kenney*, 116 Md. 24; *Dykers* v. *Leather Manufacturers' Bank*, 11 Paige, 612; *La Montague* v. *Bank of New York*, 183 N. Y. 173; *Continental Bank* v. *Tradesman's Bank*, 173 N. Y. 272; *Clews* v. *Bank of New York*, 89 N. Y. 418.) Plaintiff was not entitled to the benefit of the equitable doctrine of subrogation in any view of the case. (*Am. Bonding Co.* v. *Welts*, 193 Fed. Rep. 978; *Nat. Surety Co.* v. *Nat. City Bank*, 172 N. Y. Supp. 412.)

COLLIN, J. The plaintiff brings the action to recover the amount it was compelled to pay as surety in the bond given by Robert J. Peebles as trustee in bankruptcy of William Trist Bailey, and which Peebles, as trustee, illegally withdrew from the defendant and appropriated to his personal use. At the trial the court directed a verdict in favor of the plaintiff in the sum of six thousand six hundred dollars and interest. The Appellate Division reversed the consequent judgment and dismissed the complaint. We have concluded there was error in dismissing the complaint.

The cardinal facts are: By order duly made in June, 1906, Robert J. Peebles, trustee in bankruptcy of William Trist Bailey, a bankrupt, was directed to furnish a surety company bond in a stated sum and to deposit in the defendant all moneys of the estate immediately upon

the receipt of them.   The bond of the trustee and of the plaintiff as surety, in the usual form, was responsively furnished.   The evidence did not show that a copy of the order or bond was served upon the defendant. Between July 3, 1906, and June 27, 1907, the trustee made in the defendant twelve deposits of funds belonging to the bankrupt estate.   The deposit slips stated the deposits were made by Robert J. Peebles, trustee, and the deposits were credited to the account of " Robert J. Peebles, Trustee."   On the same day, July 3, 1906, that such account was opened by the deposit of a check, the individual account of Robert J. Peebles in the defendant was charged with a withdrawal of the amount of the check.   Of the eleven checks of third persons deposited in the trustee account a part were payable to " Robert J. Peebles, Trustee," and a part to " Robert J. Peebles." They were apparently indorsed " Robert J. Peebles, Trustee."   A check, deposited September 13, 1906, was drawn by John J. O'Grady payable to himself and was indorsed: " Pay to the order of Robert J. Peebles, Trustee in Bankruptcy for William Trist Bailey, Bankrupt.   John J. O'Grady.   Robert J. Peebles, Trustee in bankruptcy for William Trist Bailey, Bankrupt, for deposit to the credit of Robert J. Peebles, Trustee."

The withdrawals from the trustee account were made between July 17, 1906, and September 17, 1908, by fifty checks, each signed, " Robert J. Peebles, Trustee."   Of the fifty checks, thirty-two, drawn and paid prior to September 17, 1908, were issued upon the order of the United States district judge for the eastern district of New York, and each was countersigned across its face, " Percy G. B. Gilkes, Deputy Clerk, U. S. District Court, Eastern Dist. of New York," or " Richard F. Morle, Clerk U. S. District Court, Eastern District of New York," and each of twenty-five of the thirty-two had upon its face in writing, " In re Wm. Trist Bailey." Three of those checks were certified by the defendant

on the day of their date. Eight checks drawn and paid prior to September 17, 1908, were in the ordinary form, that is, without the countersignature or the statement.

The appropriations of the trust funds by the trustee to his personal use began on September 17, 1907, and were accomplished by nine checks drawn and paid within the ensuing year. Each check was in the ordinary form and, with the exception of two, was deposited in the individual account of Peebles in the defendant. During that period, one check was drawn on the account pursuant to the order of the court and was countersigned, " Richard F. Morle, Clerk U. S. District Court, Eastern Dist. of New York." There is no evidence that Peebles was indebted to the defendant at any time or that any of the moneys of the bankrupt estate misappropriated by him were received by the defendant in payment of any indebtedness to it.

General order twenty-nine of the United States Supreme Court general orders in bankruptcy, adopted and promulgated by that court, November 28, 1898, pursuant to the Bankruptcy Act (Section 30), is: " No moneys deposited as required by the Act shall be drawn from the depository unless by check or warrant, signed by the Clerk of the Court, or by a Trustee, and countersigned by the Judge of the Court, or by a Referee designated for that purpose, or by the Clerk or his assistants under an order made by the Judge, stating the date, the sum, and the account for which it is drawn; and an entry of the substance of such check or warrant, with the date thereof, the sum drawn for, and the account for which it is drawn, shall be forthwith made in a book kept for that purpose by the trustee or his clerk, and all checks and drafts shall be entered in the order of time in which they are drawn and shall be numbered in the case of each estate. A copy of this general order shall be furnished to the depository, and also the name of any referee or clerk authorized to countersign such checks."

There is no evidence that the defendant was furnished a copy of this rule.

Robert J. Peebles died December 31, 1908. A substituted trustee compelled an accounting on the part of his administrator, which revealed the peculations we have stated. Under the order of the court the plaintiff paid (the estate of Robert J. Peebles being insolvent) their amount.

The conclusion that the facts permit and give support to the inference that the defendant knew or ought to have known that the funds deposited in the trustee account were trust funds belonging to Peebles as trustee in bankruptcy of William Trist Bailey, is too manifest and indisputable to require an analytical restatement of or discussion concerning them. The defendant did not, however, by paying moneys of those funds to Peebles or crediting them to his individual account, through the check of " Robert J. Peebles, Trustee," participate in the misappropriation of them by the trustee. A liability of the defendant did not arise from those facts. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106.)

In case a copy of the general order twenty-nine had been furnished to the defendant, or the defendant had known or ought to have known of its existence, prior to the payment of the checks by which the misappropriation was effected, the payment of the nine checks would have made it liable for the diversion of the funds effected through them. The checks then would have been as to it, as they in fact were, incomplete and improperly drawn. (*American National Bank* v. *Fidelity & Deposit Co.*, 129 Ga. 126.)

We have concluded, with hesitation however, that the evidence permitted or gave support to a finding that the defendant was chargeable with knowledge of the existence of the general order. It was charged conclusively with notice or knowledge of the adjudication of William Trist Bailey's bankruptcy and with the provisions of the Bankruptcy Act, including those of section

thirty.   The adjudication was a judgment in rem, binding against all the world, so far as it determined Bailey to be bankrupt, and his property subject to administration in bankruptcy.   (*Manson* v. *Williams,* 213 U. S. 453; *Corbett* v. *Riddle,* 209 Fed. Rep. 811.)   The evidence permits the finding, as we have stated, that the defendant was chargeable with the knowledge that the moneys in the account of " Robert J. Peebles, Trustee " were trust funds arising from the bankrupt estate.   The rule that a bank is not bound to take notice of or give heed to notations or memoranda upon checks, made for his personal convenience or advantage by the drawer, is not applicable to the countersignatures and the statement, " In re William Trist Bailey."   The statement, considered with the knowledge of the bank that William Trist Bailey was an adjudicated bankrupt, may be found, in and of itself, to characterize the nature of the funds upon which the checks were drawn.   It may indicate that the checks were given in the proceedings in the bankruptcy of Bailey, upon funds arising from the bankrupt's estate.   (*Hitchcock* v. *Buchanan,* 105 U. S. 416; *Carpenter* v. *Farnsworth,* 106 Mass. 561; *Miller* v. *Roach,* 150 Mass. 140.)   The countersignatures were the formal official acts of a public officer of the bankruptcy court, to which must be imputed a cause and a purpose. The defendant could not assume or presume that they were made in sheer voluntariness or sport and without reason or effect.   The acts of public officials do not spring from such causes.   The countersignatures manifestly had a relation to the checks themselves.   If unnecessary or meaningless, in relation to them, they would not have been there.   Good and practical reason for them must in the nature of things exist.   It is difficult, if not impossible, to conceive of a reason for them dissociated from the completeness or validity of the checks.   The defendant, as a matter of natural necessity and mental operation, was bound to be in a condition

of inquiring for the cause and purpose of them.   One who has reasonable grounds for suspecting or inquiring ought to suspect, ought to inquire, and the law charges him with the knowledge which the proper inquiry would disclose.   Actual notice may be proved by direct evidence or it may be inferred or implied.   Actual knowledge is not required.   Actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would have been warranted in inferring notice.   If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired.   Knowledge of facts, which, to the mind of a man of ordinary prudence, beget inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed.   (*First National Bank of Paterson* v. *National Broadway Bank*, 156 N. Y. 459; *Baker* v. *Bliss*, 39 N. Y. 70; *Williamson* v. *Brown*, 15 N. Y. 354; *Anderson* v. *Blood*, 152 N. Y. 285; *Peck* v. *Bank of America*, 16 R. I. 710.)   In the case at bar a simple inquiry, by the bank of the trustee, for the reason of the countersignatures, would have revealed the existence of the general order and of its provisions.

The plaintiff, in virtue of the general principles of subrogation, has the rights of the obligee in the bond against the defendant.   (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 N. Y. 137; *American National Bank* v. *Fidelity & Deposit Co.*, 129 Ga. 126.)

The judgment of the Appellate Division should be reversed and a new trial granted, costs to abide the event.

HISCOCK, Ch. J., CUDDEBACK, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.