**726** MANUFACTURERS' T. CO. *v.* UNITED STATES M. & T. CO.

Supreme Court, March, 1924. [Vol. 122

MANUFACTURERS' TRUST COMPANY and SOLOMON B. KRAUS, as Administrators of the Goods, Chattels and Credits Which Were of SAMUEL KRAUS, Deceased, Plaintiffs, *v.* UNITED STATES MORTGAGE AND TRUST COMPANY, Defendant.

Supreme Court, Kings County, March, 1924.

Banks and banking — action by administrator to recover from bank amount deposited by executor in his personal account and amount withdrawn by him by check payable to his wife, legatee, and to his own order — probate of will set aside on ground of forgery and executor removed — no proof as to purpose for which money was used — presumption that money was used for estate purposes — defendant is not liable — Surrogate's Court Act, §§ 104 and 231, do not make defendant liable — defendant not liable for amount of check drawn on estate funds to executor's wife, indorsed in her name by him and deposited in joint account of executor and wife.

In an action by an administrator, who was appointed after the probate of the will of the decedent was set aside on the ground of forgery and the executor removed, to recover the amount of checks payable to the deceased and deposited by the executor in his personal account and of checks drawn by the executor to his own order and deposited in his personal account, the defendant bank cannot be held liable, since there is no proof as to what use the executor made of the moneys or that the defendant profited thereby or had any notice that the executor was abusing his trust. Under the circumstances the presumption arises that all money withdrawn by the executor was applied by him to estate purposes.

Sections 104 and 231 of the Surrogate's Court Act, which provide in effect that an executor shall not mingle estate funds with his own funds and shall deposit all funds in his name as executor, are directed against the executor and do not change the rule of law relating to the liability of the bank under the circumstances in this case.

The defendant is not liable for the amount of the check drawn by the executor to his wife, who was a legatee under the will, and indorsed by him in his wife's name and deposited in their joint account, since at the time the check was drawn, so far as the parties to this action are concerned, the executor's wife was a legatee under the will which had been probated and the amount of the check was actually deposited to her account in the bank and was not diverted by the executor. The estate is estopped from controverting the genuineness of the indorsement.

ACTION for conversion.

*Jonas & Newburger* (*Adolph Feldblum*, of counsel), for plaintiffs.

*Patterson, Eagle, Greenough & Day* (*Carroll G. Walter*, of counsel), for defendant.

HAGARTY, J. On the 3d day of January, 1920, Samuel Kraus, the plaintiffs' intestate, died. Thereafter, and on the 21st day of January, 1920, an instrument, presented to the Surrogate's Court

of New York county upon the petition of one Oscar B. Thomas and Adeline Thomas, his wife, was admitted to probate, and letters testamentary were issued to the petitioners, who duly qualified as executors. The estate amounted to more than $1,100,000 as determined by the transfer tax proceeding. The petition alleged that the said Adeline Thomas was the daughter and sole heir at law and next of kin of the deceased. Under the will, three-fourths of the entire estate was devised and bequeathed to Adeline Thomas, and the residue was given to the executors " to be distributed by them in accordance with my wishes to be expressed to them."

Thomas was a member of the New York bar and acted as the lawyer for the estate in all the proceedings incidental to the administration of the estate. He died on the 25th day of November, 1921. Up to the time of his death neither he nor Adeline Thomas ever filed an account of their proceedings. On the 7th day of February, 1922, a decree was made by the Surrogate's Court of New York county, setting aside the probate, declaring the instrument to be a forgery, finding and decreeing that Adeline Thomas was not an heir at law and not of the next of kin of Samuel Kraus, deceased, revoking the letters testamentary and removing the executors. Thereafter the plaintiffs were appointed administrators of the estate, duly qualified, and are now acting as such. While Oscar B. Thomas was acting as executor, and for many years prior to his appointment, he maintained a personal account with the defendant. On the 9th day of February, 1920, Oscar B. Thomas and Adeline Thomas, as executors, opened an account with the defendant, by the deposit of moneys belonging to the estate, it being provided that checks signed by either or both of them should be honored.

The complaint sets forth six causes of action. Prior to the opening of the estate account, and on the 5th and 6th days of February, 1920, Thomas deposited to the credit of his personal account two checks aggregating $3,611, one for the sum of $3,111.57, drawn to the order of the estate, and one for $500, drawn to the order of Samuel Kraus. Upon deposit, these checks were indorsed, " Estate of Samuel Kraus By O. B. Thomas, Executor." These amounts were collected and credited to the personal account of Oscar B. Thomas, and form the basis of the second and third causes of action. On the 29th day of January, 1921, Thomas, acting as executor, drew a check upon the estate account for $25,000, payable to the order of Adeline Thomas, deposited the same in the individual account with the defendant, and the amount was credited to that account. Adeline Thomas, called as a witness by the plaintiffs, testified that she never indorsed this check,

although her name appears thereupon, and below it is the indorsement of Oscar B. Thomas. This check transaction forms the basis of the first cause of action. Between the 6th day of May, 1920, and the 14th day of January, 1921, both dates inclusive, Thomas, as executor, drew upon the estate account, payable to his order, three checks, one for $5,000, one for $2,000, and one for $1,000, indorsed them and deposited them in the personal account. The estate account was charged with these items, and they form the basis of the fourth, fifth and sixth causes of action. Prior to the deposit and charge of the four checks last mentioned, and on the 25th day of February, 1920, Adeline Thomas' signature was added to Oscar B. Thomas' personal account with the defendant, and both of these individuals signed and delivered to the defendant a request that all securities and moneys thereafter received by it for their account, or for the account of either of them, should be held for their joint account, acting jointly and severally, with the right " to each of us at any time to withdraw or otherwise dispose of the same, or any part thereof, without the act or co-operation of the other   *   *   *."

There is no proof in the case as to what was done with the money by Thomas. The proof is that the checks were deposited to the credit of the personal account. It is not claimed that any part of the money was used by the defendant, and it is admitted that the withdrawals from the account were all made in the usual course of business and that the account was not withdrawn at any time during the years 1920 and 1921. Immediately prior to the deposit of the estate checks in the personal account of Thomas, the balance to the credit of that account was $15,067.41, and the total withdrawals between the 5th and 27th days of February, 1920, aggregated $14,674.81. During all of the period, and at the end of each month in which the checks in controversy, respectively, were drawn, the checks, as vouchers, together with statements of account showing that the said checks had been charged against the account of the estate, were forwarded by the defendant to the executors. It appears from the evidence that the sum of $25,000 was allowed in the transfer tax proceeding as a suitable deduction for attorney's fees, and the only attorney who appeared and acted for the estate was Oscar B. Thomas. On the 24th day of February, 1922, the defendant, at the request of the plaintiffs, paid to them the sum of $27,273.86, which was represented to be the " balance of checking account of the late Samuel Kraus." On the following day a small additional item of interest upon deposits was paid. No notice was given to the defendant by the plaintiffs of the claims now in litigation, prior to the 5th day of October,

1922, at which time the personal or joint account of Oscar B. Thomas and Adeline Thomas had been closed.

Why the real next of kin and heirs at law of Samuel Kraus permitted the decree of probate to remain in force for more than two years does not appear. The decree admitting the will to probate and directing the issuance of letters testamentary was a decree *in rem,* made by a court of competent jurisdiction, and all the world was entitled to act upon the faith of it. Under that decree, the property of the estate which was placed under the control of Adeline Thomas reached the person entitled to possession and control. Evidence that the decree of probate, which established her right to the money, was vacated subsequently was admitted to complete the record of the transaction, but is not otherwise material. *Thaxter* v. *Thain,* 100 App. Div. 488; *Lesster* v. *Lawyers' Surety Co.,* 50 id. 181; *Park Hill Co.* v. *Herriott,* 41 id. 324; *People ex rel. Republican & J. Co.* v. *Lazansky,* 208 N. Y. 435. Rights of creditors are not involved in this action. There is no evidence of any facts which would have invited inquiry on the part of the defendant, and even if an inquiry had been suggested, the only source of information would have been the executors themselves. The checks aggregating $3,611.57 were deposited by the executor in the individual account prior to the opening of the estate account and at a time when Thomas had a balance of over $15,000 in that account, and he did not withdraw as much as that for at least three weeks thereafter. In the absence of affirmative evidence as to what was done with the $3,611.57, or that it was in fact actually converted to the personal use of Mr. Thomas, it is consistent to assume that it was applied to a proper estate purpose. This argument applies equally well to the sum of $8,000 represented by the three checks aggregating that amount. The money was in the hands and possession of the executors. But even if conversion by Mr. Thomas had been shown, there is no evidence of notice to the defendant or that the defendant participated in the conversion. In *Bischoff* v. *Yorkville Bank,* 218 N. Y. 106, checks were drawn by an executor upon the estate account and deposited with the defendant bank to the credit of his personal account. Deposits aggregating $14,005 were so made between April, 1908, and November, 1911. In June, 1908, the executor made a payment to the defendant on account of his personal obligations by means of a check upon his personal account in which he had deposited estate funds. Thereafter, further payments were made to the defendant in the same manner, and the executor used for his personal purposes all the estate moneys so deposited, except the sum of $675.96. Later, after the executor was removed and his

**730**  MANUFACTURERS' T. Co. *v.* UNITED STATES M. & T. Co.

Supreme Court, March, 1924.                    [Vol. 122

account surcharged, the plaintiff, as in this case, was appointed his successor, and, in the trial court, recovered a judgment for all the estate funds which had been deposited with the defendant, except the sum of $675.96. The defendant was held liable for such sums as were actually converted after the defendant had been put upon notice of the conversion by accepting from the executor estate funds in payment of a personal debt. It was there held that a deposit of trust funds in a bank by a fiduciary to his individual account and credit was legal, and that the bank has the right to assume that the fiduciary would apply the funds to their proper purpose under the trust, and it does not become privy to a misappropriation by merely paying or honoring the checks of a depositor drawn upon his individual account in which there are, to the knowledge of the bank, credits created by deposits of trust funds; but, its participation in a diversion of such funds may result from either acquiring an advantage directly, or, by joining in a diversion in which it is not interested, with notice or knowledge thereof, as a result of which it becomes a privy to it. In *Fidelity & Deposit Co.* v. *Queens Co. Trust Co.*, 226 N. Y. 225, the trustee had withdrawn funds from his trust account and deposited them to the credit of his personal account with the defendant, and used the proceeds for his personal use. The plaintiff was the surety upon the bond and the defendant the bank in which the trustee had deposited the funds. The court pointed out that there was no evidence that the trustee had been indebted to the defendant, or that any of the moneys of the estate misappropriated by him were received by the defendant in payment of any indebtedness to it. It was there held that " The defendant did not, however, by paying moneys of those funds to Peebles [the trustee] or crediting them to his individual account, through the check of ' Robert J. Peebles, Trustee,' participate in the misappropriation of them by the trustee. A liability of the defendant did not arise from those facts." See, also, *Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394; *Wickenheiser* v. *Colonial Bank*, 168 App. Div. 329; affd., 224 N. Y. 651. In the light of the foregoing cases, there is no liability on the part of the defendant with respect to any of the checks constituting the second to the sixth causes of action, unless the rule of law which they establish has been changed. It is claimed by the plaintiff that such a change has been brought about by the enactment of chapter 588 of the Laws of 1916. That chapter inserted a new subdivision in section 2574 and added a new section designated as section 2664-a of the Code of Civil Procedure, which provisions now appear in sections 104 and 231 of the Surrogate's Court Act, and read as follows:

" § 104. In what cases letters may be revoked or trustee removed without a citation. In either of the following cases, the surrogate may make a decree revoking letters testamentary, of administration or of guardianship, issued from his court, or removing a testamentary trustee, without a petition or the issuing of a citation: * * *

" 7. Where such executor, administrator, guardian or trustee mingles the funds of such estate with his own or deposits the same with any person, association or corporation authorized to do business under the banking law, in an account other than as such executor, administrator, guardian or trustee."

" § 231. Funds of estates to be kept separate. Every executor, administrator, guardian or testamentary trustee shall keep the funds and property received from the estate of any deceased person separate and distinct from his own personal fund and property. He shall not invest the same or deposit the same with any person, association or corporation doing business under the banking law or other person or institution, in his own name, but all transactions had and done by him shall be in his name as such executor, administrator, guardian or testamentary trustee.

" Any person violating any of the provisions of this section shall be guilty of a misdemeanor."

It is to be observed that there is nothing in the law which forbids an executor to withdraw funds by means of checks upon the estate account to his own order. This must necessarily be so, because creditors are entitled to legal tender. Section 222 of the same act expressly authorizes executors to pay administration expenses and counsel fees " from the funds or estate in his hands, from time to time, as shall be necessary," which impliedly authorizes the executor to draw the cash in order to pay them. The statutes quoted provide that a violation of their provisions shall constitute a misdemeanor and grounds for revoking the fiduciary's letters, but do not affect the fiduciary's civil liability, nor do they impose any liability upon other persons in cases where no such liability previously existed. While it may be argued that the statutes lay down a rule different from that announced in *Bischoff* v. *Yorkville Bank, supra*, I am of the opinion that the court never intended to assert that it was right and proper for a fiduciary to mingle the trust funds with his own or to invest them in his individual name. The doctrine there announced was that the fiduciary had the power to make such individual deposits, that they were legal and that the fact of his making them in that manner did not change the nature of his title nor divert them from trust assets to individual assets. In *Matter of Union Trust Company*, 219 N. Y. 514, 521, decided

within a few months of the decision in the *Bischoff* case and without reference to the statutes, the rule of law that a trustee should not invest trust funds in his own name was recognized. To quote from the opinion: " Such manner of investing a trust fund [in name of trustee] violates the long-established rule that a trustee should invest trust funds in the name of the trustee as such, and also the rule that trust funds should at all times be kept, so far as reasonably possible, in the name of the trust, so that they can be identified, distinguished and followed by all persons interested therein." See, also, *Doud* v. *Holmes,* 63 N. Y. 635; *Otto* v. *Van Riper,* 31 App. Div. 278. Had the legislature intended to place additional responsibility upon depositaries it would have so stated. This additional responsibility cannot be placed by implication. If banking institutions are to be charged with notice of conversion or intended conversion, rendering them liable for the criminal acts of their depositors, when checks are drawn or deposited by fiduciaries under the conditions disclosed in this case, it should be done by an act of the legislature, concerning which there can be no ambiguity. I am not unmindful of the decisions in *Clifford* v. *United States Trust Co.,* 203 App. Div. 160, and *Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394. In the first cited case, there is but an intimation that the statute may have changed the rule. In the second, the question is not determined. The court expressly recognizes the old rule as applicable to the facts in that case, the deposit having been made prior to the 1st day of September, 1916, the date the law became effective, and states that it need not determine whether or not any change has been brought about by the statutes. In my opinion, therefore, there has been no change by the statutes in the rules of law applicable to this case, and the defendant's liability must be determined by the rule laid down in the *Bischoff* case and in those which follow it. There is no evidence in this case that the fiduciary actually converted the funds to his own use and that the bank had notice of or participated in the conversion.

The first cause of action presents the question of whether or not the defendant is entitled to credit for its payment of the $25,000 check under the circumstances hereinbefore set forth. Mrs. Thomas testified that she did not write the indorsement upon the check. She testified further that it was not written there by any one under her direction. Having in mind the relationship existing between Mr. and Mrs. Thomas, in so far as the accounts with the defendant are concerned, Mrs. Thomas' testimony is that she gave no express instructions with respect to the indorsement of this particular check. This cannot be construed to mean that

Thomas, as a matter of law, did not have authority to indorse, within the meaning of the statute. Neg. Inst. Law, §§ 38, 42. This presents the case of a check drawn to the order of a particular person and deposited in a bank to the credit of that person. The fact that the account was a joint and several account, instead of a separate account only, is not material. An indorsement of that person's name upon the check by some one other than the payee, even without express authorization, does not entitle the drawer to repudiate the payment and recover the amount thereof from the bank which paid the check upon such indorsement. There is no forgery because there is no attempt to defraud. By depositing the check to the credit of the payee it is actually paid to the payee as intended. Mr. Thomas, as executor, had authority to transfer estate funds to the beneficiary, in so far as the rights of the parties to this action are concerned. His right to indorse checks for deposit to her account necessarily follows. *Standard Steam Specialty Co.* v. *Corn Exchange Bank*, 220 N. Y. 478. The plaintiffs claim that the indorsement by Oscar B. Thomas was made in order to get credit for the amount of the check in his personal account and, if there is any implied guaranty of the prior indorsement, it is his individual guaranty and not that of the estate. Plaintiffs further argue that, even if Adeline Thomas had been a legatee under the will of Samuel Kraus, this would not help the defendant, because the letter adding her name means moneys lawfully received with the knowledge and consent of the depositors. This argument fails to distinguish between the liability of Mr. Thomas and the liability of the defendant. The estate is estopped from controverting the genuineness of the indorsement. *Coggill* v. *American Exchange Bank*, 1 N. Y. 113; *Phillips* v. *Mercantile National Bank*, 140 id. 556. The plaintiffs fail to distinguish between the receipt of moneys into the joint account and the subsequent withdrawal therefrom. If, therefore, Thomas drew funds out in such way as to defraud Adeline Thomas, the defendant is not responsible because she expressly authorized it to pay upon his checks. *McCabe Hanger Mfg. Co.* v. *Chelsea Exchange Bank*, 183 App. Div. 441. Other arguments have been advanced, but in my opinion it is not necessary to consider them in the decision of this case.

At the close of the entire case both sides moved for the direction of a verdict. Decision was reserved and it was stipulated that the court direct a verdict, in the absence of the jury, with the same force and effect as though the jury were actually present. I direct a verdict for the defendant upon all six causes of action.

Judgment accordingly.