Jasen, J.
(dissenting). By its holding today, the majority effectively defeats statutory provisions which operate to safeguard funds held in trust on behalf of infants against unauthorized actions of guardians.
In 1978, Robert D. Tyler, an infant, sustained serious injuries when bitten by a dog while residing with his family in Kentucky. The infant’s family retained an attorney to pursue the personal injury action and, prior to settlement, moved to New York. The settlement of the Kentucky action in the sum of $25,000 produced a net award to the infant in the amount of $14,849.23. The infant’s father, Paul E. Tyler, was appointed guardian of his son’s property pursuant to an order of the Surrogate’s Court, Steuben County, dated December 20, 1979, and letters of guardianship were issued which stated, in pertinent part, that “the Guardian be directed to collect, receive and hold all moneys received of the infant jointly with Columbia Savings Bank, Bath, New York, subject to the provisions of SCPA 1708 and the guardian’s bond be dispensed with.”
Subsequent to his appointment as guardian, Paul Tyler received a check in the amount of $14,849.23 from the infant’s Kentucky attorney. The check represented the net settlement proceeds, and was made payable to “Paul E. Tyler, Sr., Guardian of the Property of Robert Daniel Tyler”. Paul Tyler indorsed the check in his capacity as guardian: “Paul E. Tyler, Guardian of Property of Robert Daniel Tyler”, and cashed the check at a branch of Columbia Banking Federal Savings and Loan Association in Painted Post, New York. The record does not disclose whether Paul Tyler was a customer of Columbia Banking Federal Savings and Loan in Painted Post, nor whether Paul Tyler maintained sufficient funds on account to protect the bank in the event the instrument was dishonored. With the proceeds of the settlement in hand, Paul Tyler purchased a car with $3,849.23, and deposited $11,000 in an account in his own name at another branch of Columbia Banking Federal Savings and Loan Association in Bath, New York. Paul Tyler regularly drew *441 on the account containing the settlement proceeds to finance his, and his family’s, living expenses.[1] On March 31, 1982, the balance in the account was $27.99.
Upon examination of guardian accounts by the Surrogate’s Court, it was discovered that the guardian had failed to file accounts as required by SCPA 1719. On March 5,1982, the court appointed Attorney Samuel J. Knox, Jr., as guardian ad litem for the infant. Knox discovered a misappropriation of the settlement proceeds by the original guardian, Paul E. Tyler. Thereafter, this action was commenced by petitioner Knox , seeking removal of Tyler as guardian, and recovery of the misappropriated funds from both Tyler and Columbia Banking Federal Savings and Loan Association. The Surrogate’s Court in the County of Steuben ordered, inter alia, that petitioner have judgment for damages in the amount of $14,821.24, with interest, against Paul E. Tyler and Columbia Banking Federal Savings and Loan Association, and that Tyler be removed as guardian. The Appellate Division reversed the decree of Surrogate’s Court and dismissed the petition as to respondent bank, finding no basis for liability against Columbia Banking Federal Savings and Loan Association. For the following reasons, I would reverse the order of the Appellate Division and reinstate the order of the Surrogate’s Court, Steuben County.
The case of Liffiton v National Sav. Bank (267 App Div 32, affd 293 NY 799) is controlling upon the instant action. In Liffiton, one Halpen, acting in the capacity of a testamentary trustee, opened two trust accounts at the National Savings Bank of City of Albany (Albany Bank) for two infants, Anne C. Halpen (Liffiton) and Ursula C. Halpen (Moreland). The Albany Bank received $1,742.48 for deposit to an account, clearly designated as a trust for Anne, upon transfer of funds by the apparent fiduciary Halpen. Between April 1932 and March 1934, the Albany Bank paid Anne’s entire trust fund to Halpen through numerous separate transactions. It was conceded that Halpen never qualified as a testamentary trustee as required by Surrogate’s Court Act § 167 (now SCPA 1503).
*442 The Liffiton court charged the Albany Bank with knowledge of Surrogate’s Court Act § 167 and Banking Law § 237 (2), and found the Bank liable for the conversion of funds held in trust for Anne. Banking Law § 232 (2) provided that no savings bank shall accept any deposit for any credit to any trustee named in a will or appointed by a court unless a certified copy of the will, order or decree of the court authorizing such deposits or appointing such trustee, or a certificate of such appointment is filed with the savings bank. Surrogate’s Court Act § 167 required a testamentary trustee to file with the court a certified copy of the order of appointment and of the trustee’s bond, and was intended to prevent a fiduciary from dealing with the funds of the trust until the cestui, or beneficiary, was adequately protected. Accordingly, the Liffiton court charged the appellant Albany Bank with knowledge of the foregoing statutory provisions, and held:
“Appellant’s failure to assure itself of Halpen’s authority directly deprived the cestui of the protection the statute was designed to give. It would have been impossible for Halpen to have robbed his niece if appellant had exercised that modicum of care and caution customarily exercised by all fiduciaries, namely, to assure itself of his bona fide representative capacity. The simplest inquiry would have disclosed that the alleged trustee was not legally constituted as such and that he was lacking any authority to handle and administer the funds of the trust.
* * *
“We have no hesitation in arriving at the conclusion that appellant joined with Halpen in a diversion of the trust funds with actual notice and knowledge of such diversion. Appellant’s officers, if they had exercised ordinary care, had facts before them which should have aroused their suspicion, put them on their guard, and required them to exercise a degree of care commensurate with the evil to be avoided. They should have suspected, they should have inquired and hence are chargeable with the knowledge which the proper inquiry would have disclosed. (Bischoff v. Yorkville Bank, 218 N. Y. 106; Fidelity & Deposit Co. v. Queens County Trust Co., 226 N. Y. 225; Employers’ Liability Assurance Corp., Ltd., v. Hudson River Trust Co., 250 App. Div. 159, affd. as modified 276 N. Y. 542.)
“Banks are uniformly held liable for participating in diversions of those acting in a fiduciary capacity, when such actors are without authority.” (Liffiton v National Sav. Bank, 267 App Div, supra, at p 38.)
*443 Liffiton stands for the proposition that where a bank credits a fiduciary with the proceeds of an account or instrument which is unequivocally designated as a fund held in trust for another, and said fund is transferred to the fiduciary in a manner contrary to governing law, the bank will be held jointly and severally liable with the dishonest representative for the misappropriation.
In this case, the Painted Post branch of Columbia Banking Federal Savings and Loan Association (Columbia), upon presentment of an instrument payable to Paul Tyler in his representative capacity, ignored the safeguards of both Banking Law § 237 (1) and SCPA 1708, and handed Tyler $14,849.23 in cash over the counter. Under Banking Law § 383 (13), savings and loan associations such as Columbia may receive deposits subject to the same restrictions applicable to savings banks pursuant to Banking Law § 237 (see, 3 NYCRR Legal Interpretation LI 4; 4.18). Banking Law § 237 (1) provides: “No savings bank shall accept any deposit for credit to any executor, administrator, trustee, committee, conservator or guardian, named in a will or appointed by a court of competent jurisdiction, unless a certified copy of the will, order or decree of the court authorizing such deposits or appointing such executor, administrator, trustee, committee, conservator or guardian, or a certificate of such appointment is filed with the savings bank.” Since the cashing of an instrument payable to a guardian is the functional equivalent of accepting a deposit for credit to the guardian, Columbia acted unlawfully by cashing the check payable to Tyler as guardian without receipt or knowledge of the letters of guardianship.
SCPA 1708 was similarly disregarded by Columbia. SCPA 1708 (1) provides: “The court may dispense with a bond wholly or partly and direct that the guardian jointly with a person or depositary designated collect and receive the moneys and other property of the infant as directed by order and that such moneys and property as it directs be deposited in the name of the guardian, subject to the order of the court, with a bank, savings bank, trust company, industrial bank or safe deposit company designated in the order or invested in the name of the guardian, subject to the order of the court, in the shares of a savings and loan association or the savings account of a federal savings and loan association designated in the order, provided that no deposit of the funds of any one infant in any single bank, savings bank, trust company or industrial bank shall exceed the maximum amount insured by the federal deposit insurance corporation and no investment of the funds of any one infant in any *444 single savings and loan association or federal savings and loan association shall exceed the maximum amount insured by the federal savings and loan insurance corporation. Such deposit or investment shall be withdrawn or removed only on the order of the court.” Absent a bond, a guardian may not withdraw or remove a deposit or investment from a savings and loan association without court order. The function of this section is to protect and insure an infant’s property in the event of dishonest conduct by his or her guardian, and to place a bank on notice that negotiation of instruments representing funds held in trust is to be insured by fiduciary bond in the absence of a court order authorizing the withdrawal or removal.
On authority of Liffiton, Columbia is charged with knowledge of Banking Law § 237 (1) and SCPA 1708 (1) and, thus, properly held accountable for the misappropriation at issue. (See also, Matter of Weis Secs., 425 F Supp 212, affd 605 F2d 590, cert denied sub nom. Grossman v Redington, 439 US 1128.) Had Columbia complied with and heeded Banking Law § 237 (1), Tyler’s lack of authority, as defined and limited by the letters of guardianship, would have been instantly manifest.[2] Moreover, Columbia should have been apprised of its status as joint holder of the infant’s property and Tyler’s lack of legal authority to negotiate the check due to SCPA 1708 (1). Notwithstanding the fact that Columbia had clear notice of the fiduciary character of the negotiable instrument, and that no funds could lawfully be credited to Tyler without display of his letters of guardianship, Columbia failed to ascertain whether the fiduciary was either bonded or authorized by court order to negotiate the check.
The majority, in an unwarranted departure from stare decisis, disarms and displaces the protections accorded to infants by Liffiton.[3] I believe the decision of this court in Liffiton reflects a proper concern for the necessity of ensuring a bank’s observance of governing statutes upon receipt of funds held in trust and should be followed. Moreover, Liffiton equitably fashions a remedy which places the duty of care, and loss proximately resulting *445 from a breach thereof, upon the only entity capable of detecting the fraud, rather than upon the wholly innocent cestui[4]
In support of our holding in Liffiton, it has been cogently noted that “the bank must make some investigation of power to indorse, since, if such power is in fact lacking, the bank is clearly liable. Thus, in cases in which the very actions of the principal or the very documents which create and evidence the agent’s authority also prescribe the limits of that authority, it may seem reasonable to hold that the bank has constructive notice of all facts it would have discovered on investigation.” (Note, Banks and Banking, 60 Harv L Rev 645, 646; see also, Scott, Participation in a Breach of Trust, 34 Harv L Rev 454, 458, 463.) Under these circumstances, I would hold that the generalized interest of avoiding burdens upon the free transfer of negotiable instruments is most decidedly outweighed by the necessity of according infants the full force of statutory and common-law protections against dishonest fiduciaries.
The Uniform Commercial Code does not compel a contrary result. The Code provides that a fiduciary may negotiate instruments representing the funds entrusted to him in his representative capacity (UCC 3-117 [b]), and a purchaser is not charged with notice of a defense or claim based upon the fiduciary status of a party (UCC 3-304 [4] [e]). The threshold question, however, is not whether a fiduciary may freely negotiate instruments, nor whether the bank has notice of a claim or defense. Rather, before a fiduciary or bank may avail itself of protective provisions of the Uniform Commercial Code, it must be determined whether the signature of the fiduciary was authorized (UCC 3-403) or unauthorized (UCC 3-404). It is only from the signature of the fiduciary on the face of the instrument that the protections of Uniform Commercial Code § 3-117 (b); § 3-304 (4) (e) flow. If the fiduciary’s signature is unauthorized, it is deemed “wholly inoperative” (UCC 3-404 [1]). An unauthorized signature “means one made without actual, implied or apparent authority and includes a forgery” (UCC 1-201 [43]). An authorized signature “may be made by an agent or other representative, and his *446 authority to make it may be established as in other cases of representation” (UCC 3-403 [1]). The definition of representative clearly embraces a fiduciary or guardian (UCC 1-201 [35]). Thus, it is necessary to determine whether the fiduciary’s signature in the first instance was authorized, to determine the authority with which the fiduciary had actually been clqthed. The authority of a person to indorse a check in a representative capacity is governed by the general principles of the law of agency. (Hutzler v Hertz Corp., 39 NY2d 209, 213; Brady, Bank Checks § 3.5 [Bailey 5th ed].)
It is the law of New York that “[b]anks are uniformly held liable for participating in diversions of those acting in a fiduciary capacity, when such actors are without authority.” (Liffiton v National Sav. Bank, 267 App Div 32, 38, affd 293 NY 799, supra; Wen Kroy Realty Co. v Public Natl. Bank, 260 NY 84.) While it is true that the mere fact that a fiduciary deposits in his individual account paper entrusted to him in his fiduciary capacity is insufficient to charge the bank with notice of misapplication (Clarke v Public Natl. Bank & Trust Co., 259 NY 285), this does not relieve a bank from ascertaining the authority of the fiduciary to negotiate the instrument. If a negotiation of an instrument occurs in the name of a trustee or guardian, it is universally held that the bank is charged with notice that the funds are received in a fiduciary capacity, but not with notice of the misapplication or infirmity of title. (UCC 3-117 Comment 2; Wen Kroy Realty Co. v Public Natl. Bank & Trust Co., 260 NY 84, supra; Fowler v Firth, 253 App Div 146,150 [per Lewis, J.], affd 278 NY 683; Blackmon v Hale, 1 Cal 3d 548, 556, 463 P2d 418,422 [Traynor, J.]; State ex rel. Davis v Farmers & Merchants Bank, 112 Neb 840, 201NW 897; Allen v Fourth Natl. Bank, 224 Mass 239, 112 NE 650; Mott Grain Co. v First Natl. Bank & Trust Co., 259 NW2d 667, 671 [ND]; Wolffe v State, 79 Ala 201; Beecher v Buckingham, 18 Conn 110; Henshaw v State Bank, 239 I11 515, 88 NE 214; State v Jahraus, 117 La 286,41 S 575; Davis v Henderson, 25 Miss 549; Howey Co. v Cole, 222 Mo App 1200,4 SW2d 861; Bank v Looney, 99 Tenn 278, 42 SW 149; Petrie v Clark, 11 Serg & Rawle 377 [27 Pa]; United States Fid. & Guar. Co. v Adoue, 104 Tex 379,138 SW 383; Dollar Sav. & Trust Co. v Crawford, 69 W Va 109, 70 SE 1089; see, 5A Michie, Banks and Banking § 208.) A bank is under a duty of reasonable inquiry as to a representative’s actual perimeter of authority when a fiduciary or other seeks to invoke apparent authority. (Collision Plan Unlimited v Bankers Trust Co., 63 NY2d 827, 830.) By failing to conduct a simple inquiry as to the terms of the letters *447 of guardianship, when on notice of a fiduciary relationship and of an issue as to apparent authority, the bank never determined whether the signature of the fiduciary was authorized. The threshold question as to the authorization of the fiduciary was never addressed. If the bank had conducted a reasonable inquiry and simple investigation as to the authority of the fiduciary, as required by the law of agency, the limits upon his power would have been obvious. (See, Fidelity & Deposit Co. v Queens County Trust Co., 226 NY 225, 233.) A guardian should not be entitled to negotiate an infant’s check unless and until his signature as a guardian is determined by the bank to be authorized.
Barring exceptional circumstances, it has been held that failure of a bank to inquire, when a fiduciary negotiates a check made to a payee other than the representative and deposits the funds in the fiduciary’s personal account, is an unreasonable banking practice as a matter of law. (See, National Bank v Refrigerated Transp. Co., 147 Ga App 240, 248 SE2d 496; Sherriff-Goslin Co. v Cawood, 91 Mich App 204, 283 NW2d 691; Aetna Cas. & Sur. Co. v Hepler State Bank, 6 Kan App 2d 543, 630 P2d 721.) Moreover, industry custom supports the foregoing view. It has been advised that “persons dealing with fiduciaries beyond their power or authority must always return to the principal or beneficiary whatever they have received in the transaction and, since any act done by the fiduciary beyond his power is void, the third party can make no claim for loss against the principal. Under these circumstances, it is always proper for one dealing with a fiduciary to demand and receive full evidence of the authority and power under which he acts”. (Beutel & Shroeder, Bank Officer’s Handbook of Commercial Banking Law § 27-20, at 458-459 [5th ed 1982].)
The instant case represents a not uncommon situation where, due to the unfettered control of the guardian (father) exercised over the property and affairs of the infant ward (son), the fiduciary’s personal interest was directly implicated by his conduct with relation to the trust. This court has held that:
“[i]t is an acknowledged principle of the law of agency that a general power or authority given to the agent to do an act in behalf of the principal, does not extend to a case where it appears that the agent himself is the person interested on the other side.
“If such a power is intended to be given it must be expressed in language so plain that no other interpretation can rationally be given it, for it is against the general law of reason that an agent should be entrusted with power to act for his principal and for *448 himself at the same time.” (Bank of N. Y. Natl. Banking Assn. v American Dock & Trust Co., 143 NY 559, 564 [citations omitted; emphasis added].)
Dissenting opinion per Jasen, J.
Where the bank is on notice of a trust relationship with an interested fiduciary, as it was here, it would seem grossly negligent and a breach of reasonable banking practices to hand $14,849.23 in cash to the fiduciary without inquiring as to his actual authority. (See, Banking Law § 383 [13]; § 237 [1]; SCPA 1708 [1].)
The case of Clarke v Public Natl. Bank & Trust Co. (259 NY 285, supra) is distinguishable. In Clarke, this court stressed that the deposit by the fiduciary of trust funds in his personal account was lawful, and accorded the bank no notice of misapplication. In the instant case, while the fiduciary may negotiate an instrument payable to the fiduciary in the name of another (UCC 3-117 [b]), the cashing of the check by the fiduciary was unauthorized under SCPA 1708 (court order necessary to withdraw moneys deposited by fiduciary in a savings account maintained in a Federal savings and loan association). The bank’s conduct was also unlawful under Banking Law § 237 (1), since the fiduciary was credited with trust proceeds without receipt of the letters of guardianship. Moreover, the Clarke decision was premised upon the practical consideration that the representative could have converted the fund even if deposited in accordance with instructions, whereas here, if the instructions contained in the letters of guardianship were observed, the funds would not have been subject to withdrawal from the account due to SCPA 1708. Indeed, while it was lawful in Clarke to credit the fiduciary with funds held in trust, that result is expressly unauthorized absent a bank’s receipt of documentation attesting to the authority of the representative. (Banking Law § 237 [1].) Clarke should control only in those situations where the fiduciary’s conduct was expressly authorized by law.
Chief Judge Wachtler and Judges Meyer, Simons and Alexander concur with Judge Kaye; Judge Jasen dissents and votes to reverse in a separate opinion.
Order affirmed, without costs.

. The incomplete record indicates that, in addition to the automobile purchased upon cashing the check on February 13, 1980 for $3,849.23, Tyler allegedly expended the substantial remainder of the settlement proceeds upon the following items: Stereo and Records — $50; Bedroom Suite — $350; Electric Blanket — $42; Horse — $150; Saddle and Bridle — $100; Miscellaneous Toys — $1,000 approximately; Clothes — $1,000; Aquarium and Fish — $100; Flock of Banty Chickens — $35; Radio — $25; Trip to Marineland, Canada — $1,500; Bicycle — $96; Color Television — $600; Carpeting — $500; Heating Stove (wood) — $250; House (undisclosed amount).

. The legislative history of Banking Law § 237 (1), which is derived from an omnibus amendment of the banking laws in 1914 (L 1914, ch 369) is silent as to the intent of the provision barring a bank from crediting the account of a fiduciary without receipt of documents defining the authority of the fiduciary.

. Liffiton v National Sav. Bank was cited with approval by this court, for the view that “[t]he banks owed plaintiff a reasonable degree of care in the supervision of his accounts” held in trust for another. (Kopinsky v Green Point Sav. Bank, 29 NY2d 700, revg on dissenting opn of Justice M. Henry Martuscello 35 AD2d 977, 978.)

. The majority attempts to distinguish the misappropriation in Liffiton from Tyler’s conduct in the instant case, on the basis that Liffiton involved 101 separate withdrawals payable to cash. The manner of converting funds in this case is no less egregious than that in Liffiton; it is simply more efficient. Bradford Trust Co. v Citibank (60 NY2d 868), relied upon by the majority, implicated neither Banking Law § 237 (1) nor SCPA 1708 (1) and, thus, provides little guidance as to the proper standard of care to be exercised by a bank upon receipt and payment of fimds held by a guardian in trust for an infant.