KELTY and others *vs.* THE SECOND NATIONAL BANK OF ERIE.

It is well settled that presentment of a check or draft on a bank, the day after it is drawn, is in season. Checks and drafts are subject to the same rule, in this respect.

When the facts are not disputed, whether due diligence has been used is a question of law for the court.

Where, on presentment of a check or draft, the holder receives from the drawee a check for the amount, such check is not a payment, if not paid; and hence the draft does not cease to be a valid obligation. The subsequent return of the check and receipt of the draft and protest of the latter, in due season, will preserve its vitality, and the holder may recover the amount from the drawers.

THE Second National Bank of Erie, Pennsylvania, on March 23, 1866, sold a draft on Culver, Penn & Co. the agents of this bank in New York, to W. G. Gardner of

Kelty *v.* Second National Bank of Erie.

Erie, which was remitted by him to the plaintiffs in this action, in payment of a debt due them. The plaintiffs received it on the 26th March, and on the same day deposited it with the Tradesmen's Bank. The runner of the bank, to whom it was given with other drafts for collection, presented it, on the afternoon of the 27th, at the office of Culver, Penn & Co. and received a check from them on the Third National Bank, although all of their checks on that bank presented on that day had been refused payment. Within an hour afterward, the notary of the bank, having learned of the failure of Culver, Penn & Co. called at the Tradesmen's Bank, procured the check, presented it at the Third National Bank, where payment was refused, and then immediately took it to the office of Culver, Penn & Co. asked for payment, which was refused, obtained the draft from Mr. Penn, protested it, and on the same day sent notice of protest to the defendants. The plaintiffs then commenced this action, upon the check.

The defendants, in their answer, admitted the drawing and delivery of the draft, but alleged that they had no knowledge or information other than is afforded by the complaint itself, that the said bill of exchange was indorsed to the plaintiffs for value. They set up as a defense, that the said Culver, Penn & Co. at the time the said bill of exchange was so drawn, directed and delivered, had funds in their hands to a large amount belonging to the defendants, and more than sufficient to pay the said bill of exchange; and that they, the said Culver, Penn & Co. were duly advised and notified by the defendants that the said bill had been so drawn, directed and delivered; and that the said Culver, Penn & Co. were then doing business in the city of New York, who, upon receiving notice and advice as aforesaid of the said bill of exchange, charged the amount of the same on their books against the defendants; that afterwards the said bill of exchange was presented by the plaintiffs, or their agents, to the said Culver,

Penn & Co. in the city of New York, for payment, and the plaintiffs then and there agreed to, and did receive from the said Culver, Penn & Co. in satisfaction and as payment for and on account of the said bill of exchange, the check of the said Culver, Penn & Co. drawn by them upon the Third National Bank of the city of New York, for the sum of $389.46, the said firm being still solvent and in good credit, and having funds in the possession of the said bank, subject to their checks and drafts to a much larger amount than the amount of the said bill of exchange and check; that the plaintiffs neglected and delayed for an unreasonable time to present the said check for certification or payment, to the said bank; that during such delay the said Culver, Penn & Co. became insolvent and stopped payment, and that the said bank, by reason of such neglect and delay of the plaintiffs, upon the presentation for payment of the said check by the plaintiffs, or their agents, refused payment for the same.

On the trial, the court directed a verdict for the plaintiffs, subject to the opinion of the court at general term.

The defendants' counsel excepted, and presented the following written requests to charge, viz:

1. When the holder of a bill is negligent, either in person or by his agent, in presenting it for payment, and by reason thereof the bill is dishonored, the drawer is discharged from all liability on account thereof, especially where it is the fact that the drawer had ample funds with the drawee, provided for the payment of the bill.

2. That the question as to reasonable diligence in presenting the bill, is one for the jury to determine from all the facts of the case.

3. If the holder of a bill, or his agents, present a bill for payment and surrender the same to the drawee, upon receipt of his check, without demanding the cash, or that the check shall be " certified," and if the check shall not be paid, the drawer of the bill should be discharged if it

appears that the drawee would have paid the draft in money on presentment, if the check had been refused; and especially is that the case if the drawer had ample funds with the drawee to pay the draft.

4. In this case, if it appears from the evidence that the plaintiffs received the bill referred to on the 26th of March, in reasonable time to present the same, and when, if presented, it would have been paid, and they failed to present it until the afternoon of the 27th of March, and a loss thereby accrued, as between the holder and the drawer, the latter is discharged from liability.

· The justice refused so to charge, and the defendants excepted.

The jury found a verdict for the plaintiffs, for $433.44.

*Stewart, Ritch & Woodford,* for the plaintiffs. The plaintiffs are entitled to judgment upon the verdict of the jury in this case. I. The defendants having induced Mr. Gardiner to purchase from them a draft upon agents in New York, whom, for their own convenience, they had appointed, they are not entitled to the same favor in case of loss through the failure of those agents, as Mr. Gardner, or the plaintiffs to whom he transferred it. The bank makes a profit from the transaction, and in return engages that whether the draft be sent to St. Louis, or New Orleans, or anywhere else, in payment of Mr. Gardner's debt, it will be paid, if presented, when it finally reaches New York. It is not a question between two equally innocent parties.

II. There was no neligence on the part of the plaintiffs or of the Tradesmen's Bank, their agents. 1. The immense daily transactions in checks and drafts in this city, would make it impossible for banks or the mercantile community to do otherwise than was done in this case. Merchants cannnot present and collect in money each individual check or draft. Their transactions are too

large, and identification is now universally required. The porter of a city bank, having often hundreds of collections to make in a day, cannot take money or wait for checks to be sent to a bank for certification. The testimony of James H. Roberts and J. M. Palmer, shows what is the custom of merchants and banks. 2. There was no laches on the part of the plaintiffs in depositing the draft when received, so that it did not reach Culver, Penn & Co. till the 27th. Presentment of the check or draft on the day after its receipt has been held sufficient, in several cases. (*Lovett* v. *Cornwell,* 6 *Wend.* 369. *Merchants' Bank* v. *Spicer, Id.* 443. *Mohawk Bank* v. *Broderick,* 10 *Wend.* 304. *Murray* v. *Judah,* 6 *Cowen,* 484. *Wallace* v. *Agry,* 4 *Mason,* 336, *and many others.*) 3. The testimony of Mr. Adams shows that if the check received in exchange for the draft had been at once taken to the bank, it would not have been paid or certified, and he further states, that he heard early in the day, that they had suspended payment. There is no testimony that Culver, Penn & Co. did pay in currency any drafts that were presented during the 27th, and the mere possession of funds sufficient to pay this draft would not afford any presumption, under the circumstances, that they would be used for that purpose. Later in the day payment in money *was* demanded of one of the firm of Culver, Penn & Co. and refused.

III. The facts being undisputed, the question of due diligence was a question of law, and was therefore properly determined by the court. (*Bank of Utica* v. *Bender,* 21 *Wend.* 643. *Hunt* v. *Maybee,* 3 *Seld.* 266, *and numerous other cases.*)

IV. The case of *Kobbe* v. *Clark,* (*Seld. notes,* 4, 11,) is not an authority in the present case. 1. In that case, when the draft was presented, the drawee was solvent, and the draft or the check would have been paid on that day. In the present case Culver, Penn & Co. had suspended payment when the draft was presented, and no checks drawn

Kelty *v.* Second National Bank of Erie.

by them were paid during the day. 2. Moreover, what would be reasonable diligence in New York in 1845, ought not to be allowed to determine what would be like diligence more than twenty years afterwards, when the volume of business is many fold greater, and the necessity of doing business through banks and by means of checks, instead of money, is in a correspondent degree increased. The practice of requiring identification of persons presenting drafts or checks for payment, which has grown up since that case was decided, has alone greatly increased the difficulty of collecting except through banks.

V. Acceptance of the check, in accordance with the usual custom, is not payment, if the check is subsequently dishonored. (*Olcott* v. *Rathbone,* 5 *Wend.* 490. *Merchants' Bank* v. *Spicer,* 6 *id.* 443. *Higby* v. *New York and Harlem R. R.,* 7 *Abb.* 259. *Parsons on Contracts,* 2, 135.)

*A. S. Sullivan,* for the defendants. I. The defendants, on the facts shown herein, were discharged from liability on the bill, by the unreasonable negligence and delay of the holder, in presenting it for payment.

II. Although, as between Kelty & Co. and Culver, Penn & Co. the latter remained liable for the amount of the check; yet acceptance of the check, and surrender of the bill by Kelty & Co., through their agents, discharged the defendants from liability. The bill was, in fact, paid, so far as the Second National Bank of Erie was concerned. Kelty & Co. on their own risk accepted another piece of commercial paper for it. That the check proved to be valueless, is not material in this case. Under the circumstances disclosed, the previous consent of the Second National Bank of Erie was requisite in order to prolong their liability on their bill, or for the check. (*Commercial Bank of Pa.* v. *Union Bank of N. Y.,* 11 *N. Y. Rep.* 203. *Pratt* v. *Foote, Ct. of Appeals March term* 1854, *cited in above case.*

*Allen* v. *Culver,* 3 *Denio,* 284.　　*Webb* v. *Dickinson,* 11 *Wend.* 62.)

III. The question as to due diligence, should in this case, have been left to the jury.

IV. It should have been left to the jury to determine whether or not, under the circumstances disclosed herein, the plaintiffs did not accept the check in payment and discharge of the bill. (*Kobbe* v. *Clark, Seld. notes.* 4, 11.)

V. The court erred in directing the jury to find for the plaintiff, and refusing to charge as requested by the defendant. The judgment should be reversed, and a new trial ordered.

*By the Court,* INGRAHAM, P. J. Two questions are raised in this case:

*First.* Whether a party receiving a draft payable at sight, is guilty of negligence if he does not present it before the day after it is received.

*Second.* Whether if, on presentment, the holder receives from the drawee a check for the amount, when the draft is delivered up, is charged by the drawee to the drawer, passed through the books of the drawee, and the draft canceled, such facts amount to payment; or whether, if the check is not paid, the draft can be delivered back to to the holder protested and collected from the drawer.

Upon the first question, it is well settled that presentment of a check or draft on a bank, presented the day after it is drawn is presented in season, (*Merchants' Bank* v. *Spicer,* 6 *Wend.* 443;) and the same case holds checks and drafts to be subject to the same rule. (*Mohawk Bank* v. *Broderick,* 13 *Wend.* 133;) and where the facts are not disputed, whether due diligence has been used is a question of law for the court. (11 *John.* 187.)

As to the second question, under the decision in the *Commercial Bank* v. *Union Bank,* (11 *N. Y. Rep.* 203,) the receipt of the check of the drawees and the surrender of

the draft to him, the account of the drawers in the bank being at the time good, was a payment, the draft ceased to be a valid or subsisting bill, and could not be revived by any subsequent negotiation; if the check had been drawn on the bank receiving the check. This was also held in *Pratt* v. *Foote*, cited in the last case and reported 9 *N. Y. Rep.* 463, where it is said : " When the bank upon which a check is drawn accepts it upon its own debt, the same act of acceptance pays the check to the payee and the debt to the bank." In the same case it is said, if the check was drawn upon some other bank, it would then have been necessary to show a distinct agreement to accept the check in satisfaction. This is laid down as the law in *Olcott* v. *Rathbone*, (5 *Wend.* 490.) The true rule in such a case is, that the delivery of the check was not a payment if not paid, and if so, the draft never ceased to be a valid obligation. The subsequent return of the check and receipt of the draft, and its protest in due season, preserved its vitality and the plaintiffs have a right to recover the amount from the drawers.

Judgment should be entered on the verdict.

[NEW YORK GENERAL TERM, November 2, 1868. *Ingraham, J. F. Barnard* and *Mullin*, Justices.]