(39 Misc. Rep. 571.)

### CITIZENS' STATE BANK v. COWLES.

(Supreme Court, Trial Term, Westchester County. January, 1903.)

1. CHECK—TRANSFER IN DUE COURSE.

A domestic check, transferred by the payees to a third party, who took it in good faith for value and without notice of dishonor, may be enforced against the maker by a bank taking it from such third party in due course, and defenses, no fraud being pleaded, which the maker had against the payee, are cut off.

2. SAME—DELAY IN NEGOTIATION.

Where the payees of a check, dated June 1st, drawn in New York, and there received by them on that or the next day, were notified on June 4th that the maker had stopped payment because of an alleged breach of warranty of the chattels for which it was given, but nevertheless sent it to their home in Kansas, to be cashed by a resident there, who received it in good faith, on June 8th, and thereupon deposited it with a bank, also located there, there was no such delay, as a matter of law, as to raise the presumption that the check was overdue or dishonored at the time of deposit, and subject to defenses existing between the maker and payee.

3. SAME—JUDICIAL NOTICE.

Where the question arises as to whether the delayed presentment of a check is justified by the fact that it was first sent from New York to another state, the court will take notice of the fact that exchange is in favor of the city of New York, and that checks and drafts on banks there or in its vicinity are in demand throughout the rest of the country generally and at a premium.

4. USAGE AS TO TIME OF NEGOTIATION—EVIDENCE.

When a New York check was first accepted in Kansas by plaintiff, the question, "Is there any custom or usage as to the reasonable length of time, after its issue, within which a check can be negotiated, or will be received by a bank in negotiation?" asked witness, a local bank president, is improper, as apparently calling for a local instead of a general custom, existing also in Kansas. and as not asking for a fixed usage, but for a "reasonable length of time," which was for the court to find from all the facts, including any fixed general usage.

Action by the Citizens' State Bank against Sarah B. Cowles. Verdict directed for plaintiff. Motion for new trial. Denied.

Action by the holder of a bank check against the drawer. The check was given on June 1, 1900, to the order of the payees, a copartnership. It was endorsed and transferred by the payees to another, and by him endorsed and transferred to the plaintiff on June 8, 1900. The plaintiff presented it for payment to the bank upon which it was drawn on June 14, 1900, and payment was refused, having been stopped on June 4th by the drawer, the defendant.

The plaintiff having put the check and notice of demand and protest in evidence, rested.

The facts then established by the defendant, or which the jury could have found on the evidence put in by her, were as follows: She purchased of W. W. Miller & Sons a team of horses in the city of New York, and they afterwards delivered them to her at her request at her residence at Rye, Westchester county, N. Y., about 25 miles distant, on June 1, 1900, at about midnight; at the time of such delivery she gave her check dated June 1st to their order on a bank at Portchester in the same county in payment of the purchase price; the check was delivered about midnight of June 1st, or just after midnight, which would be on June 2d, and was taken back to New York City that same night, or before banking hours on the morning of June 2d; the horses were purchased and paid for under a written warranty that they were sound and well broken; the contract of warranty was broken, and thereupon on June 4th the defendant notified the said bank not to pay the check, and also on the same day notified the said payees of such breach, and that she had so stopped payment of the check; the said payees still had possession of the check, but thereafter endorsed it to the order of one Hoffman and sent it by mail with other similar checks to him at Little River, Rice county, state of Kansas, to be cashed by him; Hoffman received such check on June 8th; he was a resident of the said Little River, and president of the bank of the plaintiff which was also located there; he paid the said payees for such check the amount thereof the same day he received it, and on the same day endorsed it and deposited it to his individual account as a depositor with the plaintiff and the plaintiff credited him with the amount thereof; the plaintiff on the same day sent it to a bank in Kansas City for credit and collection, and after the usual course it was finally presented to the said bank at Portchester for payment on June 14, 1900; payment was refused, and the teller wrote the words "payment stopped" across its face; the said payees, consisting of three persons composing the said firm, were residents of Lyons, in said Rice county, state of Kansas, distant about 14 miles from the said Little River, and connected with it by railroad, telegraph and telephone; they carried on the business of horse and cattle raising on a farm at the said Lyons, and two of the firm had brought some of the firm's horses to New York City to sell, and were there on that mission, when the plaintiff purchased the team of them; the firm had had business dealings with said Hoffman for several years, and also did business with the plaintiff bank, but their firm had no account with the bank; they had had the negotiable paper received by them in their business cashed at the said bank for several years, sometimes by it and sometimes by the said Hoffman individually.

Peck & Wilcox, for plaintiff.

E. B. & C. P. Cowles, for defendant.

GAYNOR, J. The plaintiff made out a prima facie case by putting in evidence the check and the notary's certificate of its presentation for payment, and of demand and refusal, and rested. This sufficed, for the presumption of law is that the transferee of negotiable paper became a holder in due course, and in an action to recover thereon the burden is on the defendant to prove the contrary. The negotiable quality of commercial paper rests chiefly on this rule, and every one may rely upon it implicitly. Such burden never shifts, unless the defendant proves that the negotiable instrument was lost or stolen, or obtained by duress or fraud, or, in this state, diverted from the purpose for which it was issued by a fraudulent breach of trust; in which cases the burden is shifted to the plaintiff to show that he is a holder in due course, i. e., that he took it before it was due without notice of the defences against it and for value; or that some of

his predecessor transferees so took it, for of course if a transferee gets good title all transferees after him, whether before or after maturity, get the same title. Case v. Mechanics' Banking Assn., 4 N. Y. 166; Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836; Wardell v. Howell, 9 Wend. 170; Daniel, § 810 et seq.; Neg. Inst. Law (chapter 612, Laws 1897) § 91.

But none of these defences was pleaded here; nor would the evidence permit a finding to support any of them, if it were necessary to come to that. The check was freely given for property purchased, and the title of the payees to it was perfect. The defence pleaded is a breach of an alleged contract of warranty made by the payees of the check that the team of horses sold and delivered by them to the defendant, the drawer, and to pay the purchase price of which the check was given simultaneously with the delivery of the horses on June 1st at midnight (or shortly after), were sound and well broken; and that upon such breach payment of the check was stopped on June 4th by the defendant by notice given by her to the bank on which it was drawn; of all of which the plaintiff is alleged to have had knowledge before the transfer of the check to it.

From the evidence introduced by the defendant to rebut the plaintiff's prima facie case, the making of the said contract of warranty, its breach, the stopping of the payment of the said check thereafter by the defendant by notice to the bank on which it was drawn, the giving of notice of that fact and of such breach to the said payees, and of their endorsement and transfer of the check to Hoffman thereafter, and of Hoffman's endorsement and transfer thereof to the plaintiff on the same day he received it, viz., on June 8th, were all established or could have been found by the jury. The testimony of the one of the payees who sent the check to Hoffman by mail from New York City which was taken by commission, and was read by the defendant with the other evidence taken in the same way, is that he so mailed the check to Hoffman at his place of residence, Little River, state of Kansas, on June 2d; but as the testimony of Hoffman is that he received it by mail on June 8th, the jury could have found from the distance and the course of the mails that it must have been mailed later than June 4th, i. e., after notice to the said payees of the breach of warranty and that payment of the check had been stopped.

But there was no evidence that Hoffman, the first transferee, or the plaintiff, his transferee, had any notice or knowledge before acquiring the check of its actual dishonor by the stopping of its payment by the defendant, or of the breach of the warranty; or that the plaintiff or Hoffman was not a holder for full value. These things cannot be found as facts on mere suspicion; on the contrary, the rule established for the safety of the commercial world is that they must be proved by the defendant. Daniel, § 769 et seq.; Id. § 10 et seq.; Himmelmann v. Hotaling, 40 Cal. 111, 6 Am. Rep. 600.

He who draws and puts negotiable paper in circulation does so under a rule which requires him to prove that a holder subsequent to the payee did not become such in due course, in order to make available against him defences which would be good against the payee. This is the prime rule on which the safety of negotiable paper rests.

And if it had been proved that Hoffman had such notice or knowledge, the fact that he was president of the plaintiff would not suffice to attribute his knowledge to the plaintiff when it received the note from him. Casco National Bank v. Clark, 139 N. Y. 307, 34 N. E. 908, 36 Am. St. Rep. 705; Merchants' National Bank v. Clark, 139 N. Y. 314, 34 N. E. 910, 36 Am. St. Rep. 710. And, finally, when the check was deposited with the plaintiff by Hoffman in the individual account which he had with it as a depositor, and credit given to him therefor, the plaintiff became the owner thereof in due course, with all the rights of such a holder. Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9; People v. St. Nicholas Bank, 77 Hun, 159, 28 N. Y. Supp. 407; Riverside Bank v. Woodhaven Junc. Land Co., 34 App. Div. 359, 54 N. Y. Supp. 266.

But the defendant claims that the check was on its face overdue or presumptively dishonored from lapse of time as a matter of law when it reached Hoffman, and that therefore he took it of the payees, and the plaintiff took it of him, subject to any defence to it which then existed against the payees in favor of the drawer. In considering this question we must not be misled by the rule (now expressed by section 322 of our negotiable instruments law) that unless a check be presented for payment to the bank upon which it is drawn within a reasonable time after its issue, and the bank meanwhile suspends payment, the drawer is thereby released if he had funds there to meet the check. What is a reasonable time in such a case is settled by the decisions, viz., where the payee receives the check at the same place where the bank upon which it is drawn is located, it must be presented not later than next day, but if he receive it at another place, it suffices if he send it by mail for collection next day. Smith v. Janes, 20 Wend. 192, 32 Am. Dec. 527; Daniel, § 1590 et seq. But such rule has no application to the present case. The rule in some jurisdictions seems to be that a check is never overdue or presumptively dishonored so as to let in against a transferee for value defences which exist between the drawer and payee, other than that the bank has failed. Bull v. Bank of Kasson, 123 U. S. 105, 8 Sup. Ct. 62, 31 L. Ed. 97. But the law in this state is (and is now expressed in the negotiable instruments law, § 92) that the same elastic rule applies to checks as to other negotiable instruments payable on demand, with an apparent extra leniency in favor of checks, viz., that if such instruments be negotiated by the payee an unreasonable length of time after their issue, the transferee is not to be deemed a holder in due course, but is subject to the defences, and in this state to the counter claims (Code Civ. Proc. § 502), existing between the drawer and payee. What is a reasonable length of time for such instruments to run before they are to be thus deemed overdue or dishonored as a matter of law is not fixed. All we have to go by is that regard must be had to the nature of the instrument, and the facts of the particular case (Cowing v. Altman, 71 N. Y. 435, 27 Am. Rep. 70; Herrick v. Woolverton, 41 N. Y. 581, 1 Am. St. Rep. 461; Ames v. Meriam, 98 Mass. 294; First Nat. Bank v. Harris, 108 Mass. 514; Himmelmann v. Hotaling, 40 Cal. 111, 6 Am. Rep. 600; Daniel, § 1633 et seq.; Neg. Inst. Law, § 4); and where the facts are undis-

puted (and, I suppose, it should be added, different inferences cannot. reasonably be drawn from them), the question is one of law (Bryden v. Bryden, 11 Johns. 187; Kelty v. Second Natl. Bank, 52 Barb. 328)..

It does not seem that the question whether the check was overdue or presumptively dishonored when it reached Hoffman or the plaintiff was a question of fact, and therefore for the jury. The evidence on which such question rested was all introduced by the defendant, as it had to be. The essential facts are undisputed, and none of them could be rejected; and hence the question was one of law. The learned counsel for the defendant seems to understand that the jury would have been free to reject the evidence to the contrary, and find on no evidence whatever, that Hoffman and the plaintiff had knowledge of what the check was given for, of the warranty and its breach, and of the stopping of payment of the check by the defendant; but a jury trial is not so loose and irresponsible as that.

I have been referred to no text-writer or decision holding that a check is on the fourth or fifth day after its delivery (taking the time when this check was endorsed and mailed to Hoffman), or on the sixth or seventh (taking the time when it reached him), to be deemed as matter of law overdue or presumptively dishonored, so as to let in against a transferee who then takes it defences existing between the drawer and payee. A recurrence to the decisions and authorities already cited will show that a much longer time is held to be insufficient for that purpose. Nor is the fact of the payees in this case sending the check home to Kansas sufficient to make this a special case. They had to remit their collections home by checks or drafts, and it was as reasonable to send this one (the drawer of which was undoubtedly good) as to collect it and procure another check or draft for transmission instead. The court must take notice of the fact that exchange is in favor of the city of New York, and that checks and drafts on banks there or in its vicinity are in demand throughout the rest of the country generally and at a premium.

I am cited to section 94 of the negotiable instruments law as defining when the title to a negotiable instrument is to be deemed "defective," i. e., when obtained by duress, fraud, and so on, and to section 98 which shifts the burden of proof in such a case. These two sections are only a codification of the rule of law of this state as it was established by the decisions and which I have hereinbefore referred to.

The title of the payees to this check was perfect. They had the right to negotiate it, and were not obliged to stop on the claim of the defendant that the warranty was broken. But, as already stated, no fraud is pleaded.

It is claimed that the objection to the questions in respect of usage put to two presidents of local banks, one at White Plains and one at Rye, Westchester county, was erroneously sustained. The question to one was, "Is there any custom or usage as to the length of time within which a check can be negotiated or will be accepted by a bank in negotiation, reasonable length of time after its issue?" In the first place this apparently called for some local custom, instead

of specifically calling for a general one, one existing in Kansas, where the check here in question was accepted by the plaintiff. Williams v. Brown, 53 App. Div. 486, 65 N. Y. Supp. 1049. Next, while it may be that facts showing any established general "usage of trade or business" (Neg. Inst. Law, § 4), taking into account time, distance, and the nature of the transaction in all respects, might have been proved (although this is none too plain), the witness was not asked for a fixed usage, but for a "reasonable length of time," which was for the court to find from all the facts, including any fixed general usage. This disposes of the question to the other witness, which is also not altogether intelligible.

The motion for a new trial is denied.