J. SAMUEL FOWLER, as Administrator with the Will Annexed, etc., of LAVANTIA C. ABBOTT, Deceased, Respondent, v. KATE E. FIRTH, Individually and as Administratrix with the Will Annexed, etc., of EMMA G. GARFIELD, Deceased, Appellant.*

Fourth Department, January 5, 1938.

* Modfg. and affg. 163 Misc. 942.

*McKinley L. Phillips*, for the appellant.

*J. Samuel Fowler*, for the respondent.

LEWIS, J.   In June, 1936, there came into the hands of Edward J. Green, as executor of the will of Lavantia C. Abbott, deceased, a sum in excess of $5,000 which he deposited in Union Trust Company of Jamestown, N. Y., to the credit of "Lavantia C. Abbott estate, Edward J. Green, Executor." At that time Green had incurred a shortage in the funds of the estate of Emma G. Garfield, deceased, which he was also administering as executor. This short-

age led to a decree by the surrogate of Chautauqua county, dated July 7, 1936, which directed Green's removal as executor of the Garfield estate and named as administratrix with the will annexed Kate E. Firth — its principal beneficiary — who is now the defendant-appellant before us. The decree also surcharged Green personally with a sum in excess of $4,500. Thereafter a surrogate's decree dated September 4, 1936, provided that in the event Green should pay to the defendant as administratrix of the Garfield estate the sum of $5,316.84 and deliver to her certain bank stock, he would be entitled to a full release and discharge. With an apparent design to take advantage of the opportunity thus afforded to clear himself of his personal liability to the Garfield estate, Green wrongfully withdrew from the funds of the Abbott estate the sum of $4,500, which he paid over to the defendant as administratrix.

The transaction did not involve a direct payment. Instead Green drew a check dated September 4, 1936, in the amount of $4,500, upon Union Trust Company, signed " Lavantia C. Abbott estate, Edward J. Green, Executor," payable to " N. Y. draft." With this check he purchased from Union Trust Company a New York draft in like amount, payable to " Edward J. Green, Executor," and on the same day indorsed the draft " Edward J. Green, Executor," and caused it to be delivered to the defendant. In exchange for the draft, certain stock and sufficient additional cash to comply with the terms of the surrogate's decree, Green received from the defendant a general release from liability to the Garfield estate. The draft thus received by the defendant was at once indorsed and cashed by her. Within the week which followed, the Garfield estate was distributed and on September 11, 1936, the defendant appeared in Surrogate's Court where her account as administratrix with the will annexed was judicially settled and she was discharged.

Then followed Green's resignation as executor of the Abbott estate on September 28, 1936, the plaintiff's appointment as its administrator with the will annexed on October 1, 1936, and the present action by which the plaintiff seeks to recover from the defendant the unpaid balance of those funds which Green had wrongfully withdrawn from the Abbott estate and which he in turn paid over to the Garfield estate.

Upon these stipulated facts the learned official referee before whom this case was tried has ruled that Green's act in paying his personal debt to the Garfield estate by the use of Abbott estate funds was common-law larceny and that accordingly, when the defendant received such payment, she did not obtain good title

thereto as against the Abbott estate — the lawful owner of the funds. The decision proceeds upon the theory that where one obtains property by a common-law larceny and sells the same to a *bona fide* purchaser for value without notice of the defect in title, the vendee does not obtain title as against the true owner. Such was the rule of *Phelps* v. *McQuade* (158 App. Div. 528; affd., 220 N. Y. 232) where it was said (p. 530): "The possession of personal property obtained by common-law larceny confers no title which can protect an innocent purchaser from the thief." We do not question that statement as a principle of law but we hold that it has no application to the facts before us.

It is important to note that in the *Phelps* case (*supra*) and in kindred cases cited by the referee, the larcenies involved articles of jewelry or personal property other than money or negotiable paper. Here we deal with the theft of funds which reached the defendant in the form of a negotiable draft upon a New York bank. As to such a transaction the rule is: "Both at common law (*Turnbull* v. *Bowyer*, 40 N. Y. 456) and under the Negotiable Instruments Law, a holder in due course of negotiable paper takes good title even from a thief." (*Gruntal* v. *U. S. Fidelity & Guaranty Co.*, 254 N. Y. 468, 474.)

We rest our determination upon the rule last quoted above which favors the defendant's title to the stolen funds provided she came into possession of the draft as a holder in due course. (Neg. Inst. Law, § 91, subd. 3; §§ 94, 95.) In this view of the case there remains for consideration the question whether the circumstances under which the defendant received the draft were such as to put her upon notice of a defect in Green's title to it or of his bad faith in using it to pay a personal debt.

The defendant, the sole beneficiary under the Garfield will, except for an interest in a cemetery lot, had been named as administratrix with the will annexed by the same decree which revoked the letters testamentary previously issued to Green. She had succeeded to Green's administrative duties under circumstances which disclosed a course of conduct by him as executor of a character which had prompted the surrogate to remove him from that trust and to surcharge him personally with a sum in excess of $4,500.

We may assume that after July 7, 1936, the date of the decree which named her as administratrix, the defendant performed her new trust and made every reasonable effort to collect from Green his personal debt to the Garfield estate. She knew that at the date of his removal as executor he had been so circumstanced as to be unable to avoid a surcharge for that indebtedness. She also knew as administratrix that for nearly two months thereafter **no**

payment upon his personal debt was made. It was under these conditions that she received from Green on September 4, 1936, the negotiable draft of which both the payee and the indorser were " Edward J. Green, *Executor*."

The fact that the draft was payable to Green as executor and indorsed by him as such should have done more than arouse the defendant's suspicion. The form of the instrument itself gave notice at least that its proceeds were funds of an undisclosed estate. In that connection it is suggested, in support of the defendant's position, that if by the form of the draft the funds which it comprised appeared to be impressed with a trust, that trust was in favor of the person to whom the instrument was transferred, viz., the defendant. Such a suggestion is not convincing in view of the fact that on the date when the defendant received the draft from Green, payable to him as " executor," she had full knowledge, gained by her own personal responsibility for the administration of the Garfield estate, that he had not been its executor since his removal from that trust by the decree of July 7, 1936.

With knowledge thus gained she could not with impunity close her eyes to the notice which the form of the check presented to her when slight inquiry on her part would have disclosed the source of the funds. However, there is no proof that inquiry of any kind was made by her. On the contrary, it appears that she promptly cashed the draft and within one week after its receipt she had distributed the Garfield estate, secured a judicial settlement of her account as administratrix with the will annexed and obtained her discharge as such representative.

As to the timeliness of action by the true owners of the stolen funds it need only be said that on September 14, 1936 — three days after the defendant's discharge as administratrix and ten days after her receipt of the draft in question — she received written notice from " Legatees and persons interested in the Lavantia C. Abbott Estate " that the draft by which Green had paid his personal debt to the Garfield estate constituted funds of the Abbott estate.

From the stipulated facts it is clear that Green's title to the draft which he negotiated to the defendant in payment of his debt to the Garfield estate was defective. (Neg. Inst. Law, § 94.) It follows that the burden was upon the defendant as holder thereof to prove that she acquired title thereto as a holder in due course. (Neg. Inst. Law, § 98; *New York Bankers, Inc.,* v. *Duncan,* 257 N. Y. 160, 165.) This she has failed to do.

We, therefore, agree with the result reached by the referee except for the fact that an item of $100 costs has been mistakenly included in the judgment. When Green's account as executor in the Abbott estate was surcharged in the amount of $5,638.36 — being money withheld by him and unaccounted for — he was directed to pay that sum forthwith to the plaintiff " together with $100 costs of said proceedings." Thereafter he made payments totaling $2,015.34 which reduced the surcharge to $3,623.02. Instead of using the latter figure as a basis for the judgment, the item of $100 costs has been added. The funds stolen, which plaintiff now seeks to recover, did not include the item of $100 costs and accordingly no liability therefor attaches to the defendant. The judgment should be modified by reducing the same by the amount of $100, with interest thereon for eleven months, viz., $5.50, or a total reduction of $105.50, and as thus modified affirmed, without costs.

All concur. Present — CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

Judgment modified on the law by reducing the same by the amount of $100, with interest thereon for eleven months, viz., $5.50, a total reduction of $105.50, and as so modified affirmed, without costs. Certain new findings of fact made and conclusion of law modified.