[639 NYS2d 835]

In the Matter of SALVATORE DiMISA (Admitted as SALVATORE DiMISA, JR.), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, March 18, 1996

**APPEARANCES OF COUNSEL**

*Robert H. Straus,* Brooklyn *(Mark F. DeWan* of counsel), for petitioner.

*Salvatore DiMisa,* Elmont, respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was served with a petition and supplemental petition containing eight charges of professional misconduct. Charge Four of the supplemental petition was withdrawn as redundant. The Special Referee sustained all seven remaining charges of professional misconduct against the respondent. The petitioner now moves to confirm the report of the Special Referee and to impose such discipline upon the respondent as the Court deems appropriate. The respondent cross-moves to disaffirm that portion of the Special Referee's report as sustained the charges and, in the event that Charges One and Five are sustained, to limit the discipline imposed to a Letter of Caution.

Charge One alleged that the respondent failed to properly safeguard and improperly converted to his own use funds which had been entrusted to him as a fiduciary.

On or about October 7, 1988, the respondent, in his capacity as fiduciary, accepted a check in the amount of $26,700 from Thomas M. McFadden, representing the down payment in a real estate transaction involving the respondent's clients, Jack and Joan Lupo. In accordance with the terms of the contract, the respondent was to hold the down payment in escrow until the closing of title. The respondent deposited the check into his Chase Manhattan Bank (hereinafter Chase Manhattan) escrow account on or about October 11, 1988.

On or about October 11, 1988, the respondent drew a check on the escrow account to the order of Frank Biancaniello in the sum of $717.35. The balance in the escrow account at that time was depleted to less than $26,700, the amount the respondent was required to be holding in escrow.

On or about October 12, 1988, the respondent drew two checks on the escrow account to the order of Sal Musumeci, each in the amount of $9,000. In the memorandum portion of the checks, the respondent wrote "escrow" and "escrow return", respectively.

On or about October 18, 1988, Chase Manhattan issued, at the respondent's direction, Requested Check #9713 to his order, in the sum of $3,800.

On or about October 21, 1988, the respondent drew a check from his escrow account to the order of Vassiliki Pantazis in the sum of $250.38.

On or about November 3, 1988, the respondent drew a check from his escrow account to the order of Gene Cassese, in the

amount of $1,700. In the memorandum portion of this check, the respondent wrote "Naphill". On that date, the respondent also drew a check on that account to the order of Gerry Hanitos in the sum of $1,500. The memorandum portion of that check reads: "Nov. rent, 1988."

The closing in the aforesaid real estate transaction occurred on or about November 18, 1988. Between October 11 and November 18, 1988, the balance in the respondent's escrow account remained below $26,700, the amount required to be held in escrow. None of the aforementioned checks related in any way to the real estate transaction between the McFaddens and the Lupos. Nor were any of the checks issued with the permission of those individuals.

By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 1-102 (A) (4) and (8) (22 NYCRR 1200.3) and DR 9-102 (B) (22 NYCRR 1200.46).

Charge Two alleged that the respondent failed to promptly deliver to his client funds which had been entrusted to him as a fiduciary.

After the closing of title to the subject property on November 18, 1988, Mr. Lupo repeatedly requested that the respondent deliver to him the $26,700 down payment, which had been entrusted to the respondent previously and to which Mr. Lupo was entitled as part of the proceeds of the real estate transaction.

By virtue of his failure to deliver any portion of the $26,700 down payment to Mr. Lupo, the respondent violated Code of Professional Responsibility DR 1-102 (A) (4) and (8) and DR 9-102 (C) (4).

Charge Three alleged that the respondent intentionally failed to carry out a contract of employment with his client in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (8) and DR 7-101 (A) (2) (22 NYCRR 1200.32).

Charge Four alleged that the respondent failed to maintain a ledger book or similar record-keeping device, relating to an account into which the respondent deposited clients' funds or other funds held by him as a fiduciary, incident to his practice of law.

In or about January 1988, the respondent opened an account at Chase Manhattan Bank denominated "Salvatore DiMisa, Jr., Escrow Account", with the intent to use it as his escrow account, incident to his practice of law. The respondent failed to maintain an escrow ledger book or any similar record-keeping device for that account to show the source of all

subsequent deposits therein, the names of all persons for whom the respondent drew checks therefrom, and the purpose for which those checks were drawn. By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) and DR 9-102 (D) and (I).

Charge Five alleged that the respondent failed to properly safeguard and improperly converted to his own use funds which had been entrusted to him as a fiduciary.

On or about July 6, 1988, the respondent, in his capacity as fiduciary, accepted a check in the amount of $29,000 from Ethel A. Mershon, which represented the down payment in a real estate transaction involving the respondent's client, Salvatore Musumeci. According to the term of the contract of sale, the respondent was to hold the down payment in escrow until the closing.

In or about July 1988, the respondent deposited the check into his Chase Manhattan escrow account. The closing occurred on or about September 16, 1988.

Between July 6 and September 16, 1988, the balance in the respondent's escrow account remained below $29,000, the amount required to be held in escrow.

On or about September 16, 1988, the balance in the respondent's escrow account was depleted to $512.77. At the respondent's request, Chase Manhattan issued a check payable to the order of Mr. Musumeci in the amount of $28,833, drawn upon the respondent's escrow account. That check purportedly represented the return of the down payment which had been entrusted to the respondent. It was dishonored when presented for payment due to insufficient funds in the respondent's escrow account.

By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 1-102 (A) (4) and (8) and DR 9-102 (B).

Charge Six alleged that the respondent failed to promptly deliver to his client funds which had been entrusted to him as fiduciary.

After being advised that the respondent's check, dated September 16, 1988, had been dishonored, Mr. Musumeci repeatedly requested that the respondent deliver to him the $29,000 down payment, to which Mr. Musumeci was entitled as part of the proceeds of the real estate transaction. The respondent failed to deliver the down payment, notwithstanding the repeated requests.

By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 1-102 (A) (4) and (8) and DR 9-102 (C) (4).

Charge Seven alleged that the respondent intentionally failed to carry out a contract of employment with his client in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (8) and DR 7-101 (A) (2).

After reviewing all of the evidence adduced, we find that the Special Referee properly sustained all seven remaining charges. Accordingly, the petitioner's motion to confirm should be granted and the respondent's cross motion to disaffirm should be denied.

In determining an appropriate measure of discipline to impose, we have taken into consideration the respondent's claims that he himself suffered severe financial losses, that he has fully cooperated with the Grievance Committee during every phase of these proceedings, that bad business advice is not grounds for discipline, and that the two complainants did not act for several years. Nevertheless, the evidence clearly establishes that the respondent breached his fiduciary obligation to maintain escrow accounts intact. Under the circumstances, the respondent is disbarred.

MANGANO, P. J., BRACKEN, BALLETTA, ROSENBLATT and KRAUSMAN, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent's cross motion is denied in its entirety; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent Salvatore DiMisa, admitted under the name Salvatore DiMisa, Jr., is disbarred and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Salvatore DiMisa, admitted under the name Salvatore DiMisa, Jr., is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or

counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.